**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tamara Jane Rosfeld, | No. CV-20-02191-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Tamara Jane Rosfeld's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 20). Defendant SSA filed an Answering Brief (Doc. 26), and Plaintiff filed a Reply (Doc. 29). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 13), and it affirms the Administrative Law Judge's ("ALJ") decision (AR at 13-28) for the reasons addressed herein.

**I.  Background**

Plaintiff filed an Application for SSDI benefits on May 2, 2017, alleging an onset of disability date that was later amended to March 23, 2016. (AR 13). The Application was initially denied on November 29, 2017, and upon reconsideration on April 5, 2018. (*Id.*) A hearing was held before ALJ Patricia A. Bucci on January 27, 2020. (*Id.* at 35-79). Plaintiff was 39 years old on the date of the hearing, and held previous employment

as a cashier, hospital client services coordinator, state eligibility worker, store event coordinator, and patient care advocate. (AR 220). Plaintiff's Application was denied in a decision by the ALJ on March 23, 2020. (*Id*. at 28). Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed. (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of degenerative disc disease of the cervical and lumbar spine, systemic lupus erythematous, obesity, bilateral edema, anxiety disorder, depressive disorder, and borderline personality disorder. (AR 16). While the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with a number of additional limitations, and thus was not disabled. (*Id.* at 18-19).

Plaintiff raises the following issues on appeal: whether the ALJ failed to give clear and convincing reasons to discount her subjective symptom testimony, and whether the ALJ properly considered the medical evidence of record, particularly the assessments of examining psychologist, Maryann Latus, Ph.D., treating physician assistant, Christina Foster, P.A.-C., and treating mental health nurse practitioner, Michelle Carlin, N.P. (Doc. 20 at 1). Plaintiff requests this matter be remanded for an award of benefits. (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 26). The Court has reviewed the medical record and will discuss the pertinent evidence in addressing the issues raised by the parties.

**II.    Legal Standards**

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate

to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. Analysis**

Plaintiff raises the following issues on appeal: whether the ALJ failed to give clear and convincing reasons to discount her subjective symptom testimony, and whether the ALJ properly considered the medical evidence of record, particularly the assessments of

examining psychologist, Maryann Latus, Ph.D., treating physician assistant, Christina Foster, P.A.-C., and treating mental health nurse practitioner, Michelle Carlin, N.P. (Doc. 20 at 1). The Court now addresses these issues in turn.

**A.    The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues that the ALJ did not provide legitimate reasons to discount her testimony, and therefore, that the Court should remand this matter for an award of benefits. (Doc. 20 at 12-17). The Commissioner argues that the ALJ properly examined the medical evidence to determine that the record did not support Plaintiff's testimony as to the severity of her symptoms. (Doc. 26).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff testified that she was unable to work due to a combination of physical and mental impairments. Plaintiff testified that her "mental state ha[d] improved," but that she still had anxiety. (AR 55). She testified that in a typical day, she spent most of the day laying in bed or on the couch due to back pain. (*Id.* at 56). Plaintiff testified that she also experienced pain in her fingers and shoulders, and that she experienced migraine headaches two to three times per week. (*Id.* at 58, 63, 71). Plaintiff agreed that previous injections provided pain relief for a period of time. (*Id.* at 64). Plaintiff also testified that, due to mental health symptoms, she was not able to leave the house. (*Id.* at 58).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including her testimony regarding activities of daily living. (*Id.* at 19-20). In so finding, the ALJ cited to many specific examples in the record.

Plaintiff first argues that the ALJ listed a "boilerplate standard" to discount her symptoms and did not connect the discussion of medical evidence to any particular symptom testimony. (Doc. 20). The Court disagrees. The ALJ did far more than discuss general standards, but rather cited to multiple medical records as will be discussed herein.

As to Plaintiff's mental impairments, Plaintiff takes issue with the ALJ's comments that she improved after she was hospitalized following a suicide attempt, unconventionally questioned whether the ALJ was "under the impression that another suicide attempt was required to prove the severity of [her] condition[,]" and argues that the ALJ improperly focused on her normal mental status examinations. (Doc. 20 at 16). Here, the ALJ noted that following Plaintiff's one week hospitalization, she was discharged with medication, and that the record did not reflect significant increase in the Plaintiff's symptoms. (AR 21). The ALJ discussed numerous records showing unremarkable mental status examinations, treatment with psychotropic medications and therapy sessions, and Plaintiff's subjective reports of improvement of her symptoms following her hospitalization. (*Id.* at 655, 661-62, 676, 679, 681, 730, 751, 771, 795-96, 847, 957, 1265,

1270, 1310, 1359, 1671, 1779, 1828). The ALJ also explained that Plaintiff's mental health providers noted an overall improvement in her symptoms. (*Id.*) Moreover, where Plaintiff alleged difficulty in using her hands, the medical record showed no hand swelling or other defects. (*Id.* at 20, 812-13, 1687-88, 1701). The Court finds that, in total, the ALJ's decision was based on substantial evidence. And while the Court recognizes Plaintiff's arguments that mental status examinations measure cognitive functioning rather than mental health disorders, the ALJ cited numerous other reasons in the record to support his finding that Plaintiff's mental impairments were not as severe as alleged. (AR 21). There is no error.

  Plaintiff also argues that the ALJ erred in deeming her treatments for lower extremity swelling and mental health impairments as "conservative." (Doc. 20 at 15). Plaintiff argues that the ALJ could only use this as a basis to discount her testimony if he found that there were other treatments available that she unreasonably refused to avail herself of. (*Id.*) Contrary to Plaintiff's arguments, the ALJ can properly consider the types of treatment a claimant is or is not receiving to determine whether her symptom testimony is credible. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotations and citation omitted). An ALJ is also free to consider the amount of treatment a claimant receives for an impairment in determining the nature and severity of the impairment, as well as medication and any other measures used. 20 C.F.R. §§ 404.1529(c)(3)(iv)–404.1529(c)(3)(vi). While the Court agrees with Plaintiff that there is no evidence she refused recommended treatments, and also that the injections she received were certainly invasive, the Court finds no error here. Conservative treatment was not the sole reason used to discount the testimony so any error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

   Next, Plaintiff argues that the ALJ erred in determining that her activities of daily living were inconsistent with her alleged symptoms. (Doc. 20 at 16-17). Plaintiff argues that the ALJ failed to show that Plaintiff spent "a substantial part of a typical day" engaged in activities that were inconsistent with her symptom testimony. (*Id.*) The record establishes, and the ALJ discussed, that Plaintiff lived with her parents, spent time with her relatives, attended to her personal care, took care of a cat and a puppy, prepared meals, did laundry, drove a car, used public transportation, arranged for and attended her medical appointments, took medications independently, got along well with authority figures, shopped in stores, used the computer to shop, played games on her phone, watched television, operated a karaoke machine, and handled stress and changes in routine. (AR 22). Notwithstanding the reports of her daily activities, Plaintiff testified that she had to lay down in bed or on the couch most of the day. (*Id.* at 55-56) The ALJ concluded that Plaintiff's daily activities were inconsistent with the alleged severity of her symptoms. (*Id.*) While Plaintiff is correct that a claimant need not be completely incapacitated to be found disabled, it is also true that an ALJ may consider the Plaintiff's daily activities to determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter*, 806 F.3d at 488–89. The ALJ did so here. The Court finds no error in the ALJ's findings regarding Plaintiff's daily activities.

   The ALJ concluded that the examinations in the medical record, and Plaintiff's own statements of her daily activities, did not support her claims of disabling limitations, and therefore, properly found that some of her subjective symptom testimony was not persuasive. (AR 21-22). While Plaintiff may see this evidence in a different light, the Court cannot second-guess the findings of the ALJ when there is no harmful error in the discussion of the symptom testimony. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806 F.3d at 488–89.

### B. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in the rejecting the assessments of examining psychologist, Maryann Latus, Ph.D., treating physician assistant, Christina Foster, P.A.-C., and treating mental health nurse practitioner, Michelle Carlin, N.P. (Doc. 20 at 18-23). The Court will consider these arguments in turn.

As Plaintiff applied for disability benefits after March 27, 2017, the new set of regulations for evaluating evidence from medical providers applies to this case. *See* 20 C.F.R. § 416.920c. These regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations for considering physician opinions states as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources.

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

"Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502 (d). Specifically, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," and a "Licensed Physician Assistant" are considered acceptable medical sources "for impairments within his or her licensed scope of practice." *Id.* at (a). The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standards for the review of medical opinions. However, the new regulations require an ALJ to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and still require the ALJ to provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *See, e.g.*, *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020); *Jessica B. v. Comm'r of Soc. Sec.*, 2021 WL 4452850, at *3 (W.D. Wash. Sept. 29, 2021). An ALJ meets the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 725). This means that an ALJ must "do more than state conclusions." *Id.* Rather, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." (*Id.*)

### 1. Maryann Latus, Ph.D.

Plaintiff argues that the ALJ rejected psychological examiner Dr. Latus's 2017 assessment without providing specific and legitimate reasons supported by substantial evidence. (Doc. 20 at 18-21). Dr. Latus, a state agency consultative examiner, performed a psychological evaluation of Plaintiff. (AR 794-801). Dr. Latus opined that Plaintiff did not have the ability to maintain regular attendance at work, and could not appropriately

interact with co-workers, supervisors, or members of the public. (*Id.*) Dr. Latus also observed that Plaintiff would have difficulty concentrating, difficulty with leaving her house, and anxiety, while also observing that Plaintiff was able to sustain attention during the examination and showed appropriate and congruent affect with no mood shifts. (*Id.* at 797, 800). Finding this opinion unpersuasive, the ALJ stated that Dr. Latus[2] only examined Plaintiff on a single occasion and only reviewed mental health records from two appointments rather than the longitudinal history, noted that the opinion was based in large part on Plaintiff's subjective statements, and found that the opinion was inconsistent with Latus's own observations and findings and with the record as a whole. (AR 24).

Plaintiff argues that each of the ALJ's reasons for finding this opinion unpersuasive are without merit. (Doc. 20 at 18-21). Plaintiff first argues that the ALJ erred in rejecting the opinion because Dr. Latus only examined Plaintiff once. (Doc. 20 at 19). The Court agrees that, on its own, this would not be a proper reason to reject the opinion of an examining physician, who is generally hired by the agency to perform a single examination of a claimant. However, the ALJ gave other valid reasons to find this opinion unpersuasive and thus, any error here was harmless. For instance, the ALJ found that Dr. Latus did not base her assessment on any objective evidence in the record. (AR 24). The ALJ also found that the opinion was unsupported by mental status findings, evidence of improvement in the record, and the Plaintiff's reported activities of daily living. (*Id.*)

Plaintiff also takes issue with the ALJ's statement that Dr. Latus appeared to rely on the subjective complaints of Plaintiff rather than objective evidence. (Doc. 20 at 19). However, a review of Dr. Latus's opinion supports the ALJ's finding. For instance, while Dr. Latus opined that Plaintiff would have "difficulty with concentration" and "anxiety," her report noted that Plaintiff "was able to sustain attention throughout the evaluation. Her comprehension was good," and she showed appropriate and congruent affect with no mood shifts. (AR 797). In short, the report from the single examination of Plaintiff by Dr. Latus

---

[2] Unfortunately, the ALJ refers to Dr. Maryann Latus as "Dr. Maryann Tatus" throughout the decision. However, the records cited to confirm that where the ALJ discuses Dr. Tatus, she does mean Dr. Latus. (AR 24).

- 10 -

was not consistent with Dr. Latus's own conclusions as to Plaintiff's impairments. Therefore, the ALJ did not err in finding that Dr. Latus relied in-part on Plaintiff's subjective complaints in finding her opinion to be not persuasive. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217 (9th Cir. 2010). The Court finds no error here.

## 2. Christina Foster, P.A.-C & Michelle Carlin, N.P.

Plaintiff also argues that the ALJ gave four conclusory and insufficient reasons for discounting the opinions of Christina Foster, P.A.-C ("PA Foster") and Michelle Carlin, N.P. ("Nurse Carlin"). (Doc. 20 at 22-24). The Commissioner argues that the ALJ properly supported his findings here with evidence in the record. (Doc. 26 at 21-25).

PA Foster completed a six-question check-box questionnaire regarding Plaintiff's pain function capacity. (AR 2035-36). PA Foster opined that Plaintiff had moderate pain severity, defined as "pain affects, but does not preclude ability to function," and also that Plaintiff had moderately severe pain "during flare ups," defined as "pain seriously affects ability to function." (*Id.*) PA Foster opined that the factors that cause the pain include changing weather, movement, stress, cold, and static position. (*Id.*) PA Foster further opined that the pain constantly interferes with Plaintiff's attention and concentration, both frequently *and* constantly resulting in a failure to complete tasks in a timely manner. (*Id.*)

Nurse Carlin opined that Plaintiff had severe impairments that precluded the ability to perform work-functions 21% or more of an eight-hour workday, and that Plaintiff would miss work more than three days per month due to her impairments. (*Id.* at 2037-40).

In finding that both of these opinions were not persuasive, the ALJ found the opinions to be conclusory, noted that there were improvements in Plaintiff's symptoms not accounted for in the opinions, discussed that the opinions were internally inconsistent, and determined that the extent and severity of the limitations assessed were inconsistent with the record as a whole. (AR 24-25). Plaintiff argues that none of these reasons were legitimate reasons based on substantial evidence.

As to the conclusory nature of PA Foster's and Nurse Carlin's opinions, the ALJ stated that no objective clinical findings were cited in support of the limitations assessed.

(AR 23-24). As an initial matter, there is nothing incorrect about this statement. A review of both opinions confirms the accuracy of the ALJ's statement that no objective clinical findings were cited in support of the conclusions reached. (*Id.* at 2035-36, 2037-40). While Plaintiff argues that medical providers are not required to provide clinical findings when filing out assessments such as here, Plaintiff cites to no applicable case law or regulatory authority for her argument, but rather cites to a case holding that the absence of records regarding an alleged symptom is not enough to discount a plaintiff's subjective symptom testimony. (Doc. 20 at 22). Notwithstanding the lack of provided authority, the Court generally agrees that check-box forms are by their nature seeking general information, and therefore, they do not ask the provider to cite to medical records. Because this was but a single reason mentioned in the ALJ's opinion, the Court finds any error here harmless. *See Molina*, 674 F.3d at 1115.

Next, Plaintiff argues that the ALJ erred in "cherry-picking" specific areas of improvement in the treatment record to find that the opinions were inconsistent with the provider's own medical records and with other parts of the record. (Doc. 20 at 22-23). Far from cherry-picking, the ALJ cited more than two-dozen pages of medical records in the discussion of PA Foster's opinion and numerous pages of medical records as to Nurse Carlin's opinion. (AR 23-24). For instance, the ALJ noted that PA Foster's medical notes from an October 2019 appointment reflect that as to Plaintiff's pain, she reported she was feeling "a lot better" when taking her medication. (*Id.* at 23, *citing* 1684). Moreover, at that time, Plaintiff's muscle pains were managed through pain management, and while Plaintiff had some tenderness in the spine, she had no swelling. (*Id.*, *citing* 1685-88). The ALJ also noted that Plaintiff's lupus was controlled and stable (*Id.*, *citing* 1779), and that the opined limitations were inconsistent with multiple records indicating intact neurological findings. (*Id.* at 339, 468, 474, 508, 541, 544-45, 559, 588-89, 654-55, 695-96, 710-11, 791-93, 812-13, 824-24, 847, 1362, 1390, 1639, 1656, 1687-88, 1701-02, 1911).

The ALJ also found that PA Foster's opinion was inconsistent with Plaintiff's

reported level of daily activity. (*Id.* at 23). Plaintiff apparently does not take issue with the ALJ's discussion on this matter as she does not raise the issue as to PA Foster in her brief. Notably, as discussed above, PA Foster opined that Plaintiff's pain was so severe that it constantly prevented her from paying attention. (*Id.* at 2035-36). The ALJ discussed how the opinion of debilitating limitations was inconsistent with Plaintiff's ability to take care of herself, to care for a cat and a dog, to prepare meals, to do laundry, drive, shop in stores, and use public transportation, among other cited examples. (*Id.*) The ALJ can properly rely on such reports and did not err in doing so here.

Contrary to Plaintiff's arguments as to PA Foster's and Nurse Carlin's opinions, the ALJ did not simply list insufficient reasons for findings these opinions not persuasive. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The Court finds no error here.[3]

**IV. Conclusion**

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly considered the medical evidence of record and properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. *See Orn*, 495 F.3d at 630.

. . . .

. . . .

. . . .

. . . .

---

[3] Plaintiff also argues that the ALJ made a harmful "accusation" that "PA Foster just threw her professional judgment out the window" when finding that "because [Foster's] opinion is not supported by the evidence, it appears to rely quite heavily on the claimant's subjectively reported pain and to uncritically accept as true most, if not all of what the claimant reported." (Doc. 20 at 22, *citing* AR 23). Plaintiff argues that the ALJ's use of the term "uncritically accept" is "beyond the pale." (*Id.*) As Plaintiff cites to no legal authority for this argument, the Court will not address it specifically. However, the essential argument Plaintiff appears to be making—that the ALJ did not cite to substantial evidence to reject the opinion of PA Foster—has been addressed by the Court.

- 13 -

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 21st day of March, 2022.

*[signature]*

Honorable Diane J. Humetewa
United States District Judge

- 14 -